DAVE UHLENHAKE v. STATE.

No. A-8892.  Nov. 22, 1935.
(52 Pac. [2d] 117.)

Karl D. Cunningham, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Dave Uhlenhake, was tried and convicted in the county court of Kingfisher county, the jury leaving the punishment to the court, upon an information which in substance charges that in said county on or about the 15th day of September, 1934, he did willfully, and unlawfully, obstruct and delay one H. E. Cleaver, a deputy sheriff, in the discharge of his duty as such officer in the execution of a search warrant, and did forcibly and violently prevent said officer from serving said search warrant.

Motion for a new trial was duly filed, presented, and overruled.

The judgment and sentence of the court was confinement in the county jail for thirty days and to pay a fine of $50 and the costs.

The statute under which the information in this case was prosecuted is as follows:

Section 2488, St. 1931. "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

Several assignments of error are presented by the petition. Those argued in the brief are:

"Error in overruling the demurrer to the information; error in admitting incompetent testimony; and error in overruling the demurrer to the state's evidence."

It appears from the record that appellant with his family lived on East Broadway in the city of Kingfisher. On September 15, 1934, about the hour of 11 p. m., Ed Martin, sheriff, and three other peace officers gained admittance and searched appellant's residence for intoxicating liquors, but the search was fruitless. The sheriff then arrested appellant and put him in jail.

The prosecuting witness H. E. Cleaver, deputy sheriff, testified that he had a search warrant and attempted to search the defendant's home. That Ed Martin, sheriff, Jay Smith, chief of police, and Mr. Duggan went to the back door, and witness with Olin Wall went to the front door; that when he knocked the defendant raised the door curtain and peeked out, then opened the door about a foot, and he started to hand him the search warrant, the defendant started to close the door, and witness attempting to catch it, his left hand went through the glass panel in the door. The other officers then came around and he gave the search warrant to Sheriff Martin, and told him he was going uptown to have his hand dressed. He further testified that he had been unable to find the search warrant since he made his return on it Monday following the Saturday night when the search was made.

Olin Wall testified that he was night watchman of the city of Kingfisher and with other officers went to the home of Dave Uhlenhake to search for whisky; that with Toby Cleaver, he stopped at the front door and the other officers went around to the back door; that Uhlenhake pulled the curtain back, opened the door, and was shutting the door, when Toby told him he had a search warrant. Just then Toby hurt his hand in the door. The other officers came up, and Toby handed Sheriff Martin a paper. They then went in and searched the house.

The testimony of Jay Smith, chief of police of the city of Kingfisher, was to the effect that he was with the officers; they said they had a search warrant; that with the sheriff and Mr. Duggan he went around to the back door, and found it locked; they heard the glass break and walked around to the front door; there Cleaver handed Sheriff Martin a paper and said something about his hand being cut and left, and they went in and searched the house.

C. O. Oakes, justice of the peace, against objections, testified that there was an affidavit for a search warrant and he issued a warrant to search the premises and turned it over to the sheriff's office. Motion to strike as not the best evidence overruled. That he had made a search of his office and could not find either the affidavit or search warrant.

Sheriff Martin testified that he was at the back door and heard glass breaking and ran around to the front door and took the warrant from Cleaver and searched the house; that Jay Smith went in ahead of him; that he handed defendant a copy of the search warrant; that he gave Mr. Cleaver the search warrant on Monday to make a return on it.

The state rested, and the defense interposed a demurrer to the evidence as being insufficient to show that the officers were at the home of defendant under and by virtue of a valid search warrant, which demurrer was overruled. Exception reserved.

On the part of the defense, Bill McHone testified that he was at the home of defendant at the time the glass panel was broken out of the door there; that he was sitting within six feet of the door, when defendant opened it, and didn't hear a word spoken; that it was then about 11 o'clock at night; that Sheriff Martin, Jay Smith, and Olin Wall came in and searched the house; that Sheriff Martin laid a paper on the table in the second room; that the children were in bed; that his brother had been there in the early part of the evening.

Defendant as a witness in his own behalf testified that he was sitting in the front room when the door rattled, and he opened the door, looked out and did not see anybody, and shut the door; then the glass in the door was broken. He opened the door again, and Olin Wall walked in, Jay Smith, and Sheriff Martin following him, and they searched the house; it was about 11 o'clock at night. Sheriff Martin laid a paper on the dining room table, arrested him, and took him to jail, where they kept him from Saturday night until the following Tuesday at 4 o'clock.

On cross-examination he stated that he had lived in Kingfisher 34 years; that he had to get a writ of habeas corpus to be admitted to bail.

Iva Wells testified that she was at the home of defendant when the officers came there and saw defendant get out of his chair, go to the door and open it, and when he closed the door the glass panel was broken; that if any-

body spoke to him she did not hear it. Then defendant again opened the door, and Olin Wall came in followed by Jay Smith and Sheriff Martin; they searched the house and arrested Mr. Uhlenhake.

Alice Uhlenhake, wife of appellant, testified that she was in the kitchen and heard somebody unlatch the screen on the back porch; that when she called the children in that evening, she put the night lock on the back door.

It is contended for appellant that the invasion of his home and the search of the same was an unauthorized trespass, and in violation of the constitutional guaranty that:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

Section 30, art. 2, Bill of Rights. And in violation of section 2639, St. 1931, that:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house or place for storage, or unless such residence is a place of public resort."

And section 3230 requires that:

"The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits be positive that the property is on the person, or in the place to be searched. In which case he may insert a direction that it be served at any time of the day or night."

In that there was no competent evidence showing, or tending to show, that a complaint or affidavit sufficient

to justify the issuance of a search warrant for the home of the defendant was ever made, which warrant, if ever issued, was never returned, and no competent evidence showing that the officers had lawful authority to gain admittance to the defendant's home, or that the warrant authorized a search in the nighttime. And that the evidence is insufficient to show that the offense charged, or any other crime, was committed by the defendant in the presence of the sheriff who made the arrest upon which this prosecution followed.

It is evident from the record that the defendant was convicted, the evidence and the law to the contrary notwithstanding.

Probable cause for the issuance of a search warrant is a mixed question of law and fact, and the true test of sufficiency of the complaint or affidavit to warrant the issuance of a search warrant is whether it has been drawn in such a manner that perjury could be charged thereon if any material allegation contained therein is false.

Our Criminal Code provides:

"A person who maliciously and without probable cause procures a search warrant to be issued and executed is guilty of a misdemeanor."

Section 3239, St. 1931. And that:

"A peace officer in executing a search warrant, who willfully exceeds his authority, or exercises it with unnecessary severity, is guilty of a misdemeanor." Section 3240.

The information in this case alleges that the defendant did willfully and unlawfully resist, obstruct, and delay an officer, "engaged in the execution of a legal process, in the due and lawful execution of his duty as such officer, the same being a search warrant."

On the trial of this case it was necessary for the state to establish the fact that such process was regular and legal on its face.

A warrant regular on its face, although illegally issued, is a protection to the officer who has no knowledge of the illegality of its issue.

The only primary and competent evidence introduced to show the issuance of a search warrant was Exhibit 1 as identified by the witness Owens, as follows:

"Case No. 346. State of Oklahoma v. Dave Uhlenhake.

"Journal Entries. Complaint filed this 15th day of Sept. 1934, alleging that said Defendant on the 15th day of Sept. 1934, committed the crime of Violation of Prohibitory Law. Complaint sworn to by Ed Martin, S. Warrant issued 15 day of Sept. 1934, delivered to Sheriff of Kingfisher County, Oklahoma.

"Warrant Returned ———— day of ————193—, served as commanded ———— day of ————, 193—."

It is a well-established rule of the law of evidence that the best evidence of which the case in its nature is susceptible must, if accessible, be produced. Dubois v. State, 22 Okla. Cr. 308, 210 Pac. 1043.

The rule of evidence requiring that the best evidence shall be produced, to the exclusion of secondary and hearsay, is violated by the admission of oral testimony to show the contents or recitals of a search warrant and the complaint or affidavit upon which such warrant issued.

Where a justice of the peace has acquired jurisdiction, the only competent evidence of the proceedings had is the record required by law to be made, and the record is conclusive as against any parol attack in a collateral proceed-

ing attempting to impeach it. Ex parte Walton, 2 Okla. Cr. 437, 101 Pac. 1034.

In issuing a search warrant the statute requires the evidence of probable cause to be made a permanent record in the form of a verified complaint or an affidavit.

The complaint or affidavit and the search warrant should be matters of public record in the office of the justice of the peace who issued the search warrant.

The statement of the custodian of a record as to its contents is no more valuable than the statement of any other person who has read it. The record itself is the evidence, and the affidavit and the warrant issued thereon are the best evidence of what they contain.

Where a record is lost or destroyed, the statute provides for substitution.

Section 810, St. 1931, provides:

"Whenever the record of any judgment or decree, or other proceeding, of any court of this State, or any part of the record of any judicial proceeding or any other public records, shall have been lost or destroyed, any person interested therein may, on application by petition, in writing, under oath, to the proper court of the county wherein the records were kept, and on showing, to the satisfaction of such court, that the same has been lost or destroyed without fault or neglect of the person making such application, obtain an order from such court, authorizing such defect to be supplied by a duly certified copy of such original record, where the same can be obtained; which certified copy shall, thereafter, have the same effect as such original record would have had, in all respects."

Section 3233, St. 1931, provides that a return to a search warrant shall be verified by the affidavit of the officer. The written return to the execution of a search

warrant is ordinarily the best evidence of what the executing officers did. Welch v. State, 30 Okla. Cr. 330, 236 Pac. 68.

Under the statute duly certified copies of the record in question would have the same validity and effect as the original complaint, or affidavit and warrant issued thereon. It would have been proper for the county attorney to ask for such substitution as soon as the loss was discovered.

The Constitution of our state designed as a bulwark against the power of official oppression is broad enough to accomplish its purpose.

In Foreman v. State, 8 Okla. Cr. 480, 128 Pac. 1101, 1102, we said:

"The Bill of Rights is something more than a mere compilation of glittering generalities. Some of its provisions constitute a formal and public declaration of popular rights and liberties. The guarantee in article 2, § 30 * * * that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated, should be respected by all peace officers and law-abiding citizens."

And the statutes are in accordance with the Bill of Rights.

The effect of said section 30 is to put the courts of the state and state officials in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, house, papers, and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, and the duty of giving to it force and effect is obligatory upon all intrusted with the enforcement of the laws.

The violation of the rights, privileges, and immunities secured by the Constitution should find no sanction in the judgments of the courts which are charged at all times with support in the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

What we have said leads to the conclusion that the court erred in overruling the defendant's demurrer to the evidence, and also erred in admitting incompetent and secondary evidence.

It is hardly necessary to say, so far as the record shows, this prosecution was destitute of merit.

Because the conviction is contrary to law and to the evidence, the judgment of the lower court is reversed, and the case is remanded, with direction to dismiss and costs occasioned by this appeal taxed to Kingfisher county.

DAVENPORT, P. J., and EDWARDS, J., concur.